**2020 UT App 153**

## THE UTAH COURT OF APPEALS

ALFREDO ROJAS,
Appellee,

*v.*

DERRICK MONTOYA AND VALERIE SWANSON,
Appellants.

Opinion
No. 20180497-CA
Filed November 13, 2020

Fifth District Court, Beaver Department
The Honorable Keith C. Barnes
The Honorable Paul D. Lyman
No. 150500012

J. David Milliner and Jacob B. Stone,
Attorneys for Appellants

Justin Wayment, Christian Thomas Jones, and
Matthew D. Carling, Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and DIANA HAGEN concurred.

ORME, Judge:

¶1 Derrick Montoya and Valerie Swanson (collectively, Appellants) challenge the district court's denial of their motion to set aside default judgment. They primarily argue that the court exceeded its discretion under rule 60(b) of the Utah Rules of Civil Procedure in determining that their previous counsel's failure to provide their correct mailing addresses in his notice of withdrawal, which they contend resulted in their failure to appear at the pretrial conference where default judgment was entered, did not warrant relief. They also assert that because they acted with due diligence, any neglect on their part in not appearing for the pretrial conference was excusable. We decline

to disturb the district court's ruling because any mistake made by the court, plaintiff Alfredo Rojas, or Appellants' previous counsel was a result of Appellants' unreasonable behavior in failing, for a period of nearly two years, to keep the court apprised of their correct mailing addresses.

BACKGROUND

¶2     In 2012, Appellants and Rojas entered into an agreement regarding a taco shop in Beaver, Utah. In 2015, a dispute arose concerning the nature of that agreement, with Appellants claiming that the agreement was a profit sharing arrangement in which Rojas merely took over as manager, while Rojas contended that the agreement was for him to lease and operate the shop as its owner. Appellants subsequently terminated the agreement and took control of the shop. Rojas then brought suit. Because Montoya owned the shop before the arrangement with Rojas, and because Swanson, Montoya's sister and business partner, lived in California, Appellants decided that Montoya would "take [the] lead" in handling the case and would inform Swanson of any developments.

¶3     At the beginning of the case, Rojas had Montoya personally served at the home of Montoya's friend's widow in Beaver, Utah, but that service was quashed with the help of an attorney (Attorney 1) because the sheriff's deputy who served it failed to endorse the date of service or sign his name on the return of service. Attorney 1 then withdrew from the case without providing Appellants' mailing addresses on his notice of withdrawal, contrary to the express requirement of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 74(a). Accordingly, the district court allowed service on Appellants through (1) publication, (2) serving any employee of the taco shop, and (3) sending a copy of the summons and complaint by first class mail and certified mail to the taco shop. As a result, Appellants received the complaint and they answered on December 10, 2015, with the help of a different attorney (Attorney 2).

¶4 Approximately five months later, in April 2016, Attorney 2 withdrew and, on his notice of withdrawal, he provided a street address in St. George, Utah, for Montoya and a street address in Beaver, Utah for Swanson. These addresses were incorrect.[1] Appellants then engaged another attorney (Attorney 3), who made his appearance in July 2016.

¶5 After a scheduled pretrial conference was continued, an attempted mediation failed, and some discovery was undertaken, Attorney 3 withdrew on March 22, 2017, and he provided a Beaver street address for Montoya and an Oceanside, California street address for Swanson on his notice of withdrawal.[2] That same day, Rojas mailed a notice to appoint counsel or appear personally to Appellants at the addresses listed in the notice of withdrawal. *See id.* R. 74(c). Rojas additionally mailed a copy of the notice to the widow's address, where Montoya was originally served, albeit ineffectively. The notices sent to Montoya in Beaver were returned as undeliverable, but the notice sent to Swanson was not returned, and it is undisputed that this California address was her correct mailing address. But Swanson, who was out of the country on a

---

1. Rojas asserts that he never received an appropriate mailing address for Montoya, and Appellants do not claim that this St. George mailing address was correct and the one that Rojas should have used.

2. Montoya's actual street address had an additional digit not included by Attorney 3, but Montoya asserts that even if this address had been correctly listed on the notice of withdrawal, it still would not have been a correct mailing address because the United States Postal Service delivers mail in Beaver only to P.O. boxes and not to street addresses. Montoya insists that he gave Attorney 3 his proper P.O. box mailing address, which raises the question why, if he did, Attorney 3 nonetheless took it upon himself to use an incorrect street address.

month-long vacation, claims she did not see the notice until she returned home on April 21.

¶6 On April 13, 2017, Rojas mailed notice of an upcoming pretrial conference scheduled for May 8, 2017, to Swanson at her California mailing address and to Montoya at the flawed Beaver street address, as well as to the widow's street address. Again, the notices sent to Montoya in Beaver were returned as undeliverable, but the notice sent to Swanson was not returned. Nevertheless, Swanson asserted that she did not receive notice of the hearing. The district court also emailed a notice of the pretrial conference to Attorney 1's email address.[3]

¶7 The court held the scheduled pretrial conference on May 8. Rojas and his attorney were present, but neither Appellants nor any attorney on their behalf appeared. As a result, Rojas moved for default judgment, which the court granted. As required by rule 58A(c)(1) of the Utah Rules of Civil Procedure, Rojas sent copies of the judgment to Appellants at the same addresses as the previous mailings, which were their only addresses on file.

¶8 On June 15, 2017, with the help of a new attorney (Attorney 4), Appellants moved to set aside judgment, arguing that under rule 60(b)(1) of the Utah Rules of Civil Procedure, "[t]he judgment should be set aside based on [Appellants'] excusable neglect." They also invoked rule 60(b)(4), arguing that the judgment was void because it "was entered in violation of [Appellants'] right to due process." At a subsequent hearing on the matter held in October 2017, the court orally denied the motion, finding that there was "a lot of neglect" by Appellants that was "not excusable" and that "[t]his was a long term problem."

---

3. The record does not disclose whether Attorney 1 advised the court of its mistake.

¶9    In November, well beyond the 90-day limit for motions to seek relief from judgment under subsections (1)–(3) of rule 60(b), Appellants had yet another attorney (Attorney 5) enter a limited appearance for the purpose of requesting a rehearing. Appellants argued that a rehearing was necessary because "it appear[ed] that the prior briefing on [Appellants'] Motion to Set Aside was not sufficient to convey . . . to the Court" that "the Due Process principles of fundamental fairness require[d] that the default judgment be set aside." They alleged that Attorney 3 "made a mistake when he failed to include a good mailing address for [Montoya]," which Montoya had provided to him, "when he filed and served his Notice of Withdrawal." Due to this mistake, "[Montoya] never received [Attorney 3's] Notice of Withdrawal or any subsequent notice from either the Court or [Rojas]," which directly resulted in Appellants' failure to "appear[] and defend[] at the May 8, 2017 pretrial conference." Appellants also argued that judgment should be set aside on the separate ground of excusable neglect because they "act[ed] in a reasonably prudent manner under the circumstances of this case." Lastly, Appellants asserted that the judgment should be set aside on the basis that it was void because "judgment was entered without the notice required by due process."

¶10    The district court granted the motion for rehearing and again heard oral argument on the matter, with a different judge presiding. In a written order, the court again denied Appellants' motion to set aside, ruling that "[Appellants] neglected to keep the Court updated as to their whereabouts or otherwise remain apprised of developments in this case" and thus could not "demonstrate specific details of due diligence on their part" that would warrant setting aside the judgment. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶11    Appellants challenge the district court's denial of their motion to set aside default judgment on two grounds. First, they argue that under rule 60(b)(1) of the Utah Rules of Civil

Procedure, their failure to appear at the pretrial conference was due to both reasonable mistake and excusable neglect. "A district court has broad discretion to rule on a motion to set aside a default judgment under rule 60(b) of the Utah Rules of Civil Procedure." *Menzies v. Galetka*, 2006 UT 81, ¶ 54, 150 P.3d 480. But this "discretion is not unlimited," and due to the "equitable nature of the rule . . . a district court should exercise its discretion in favor of granting relief so that controversies can be decided on the merits rather than on technicalities." *Id.* (quotation simplified). "Based on these principles, . . . it is quite uniformly regarded as an abuse of discretion to refuse to vacate a default judgment *where there is reasonable justification or excuse* for the defendant's failure to appear, and timely application is made to set it aside." *Lund v. Brown*, 2000 UT 75, ¶ 11, 11 P.3d 277 (emphasis added) (quotation otherwise simplified). Additionally, the "court's ruling must be based on adequate findings of fact and on the law." *Id.* ¶ 9 (quotation simplified). The court's findings of fact are reviewed "under a clear error standard of review." *Menzies*, 2006 UT 81, ¶ 55.

¶12    Second, Appellants contend that the court should have set aside the default judgment under rule 60(b)(4) of the Utah Rules of Civil Procedure because the judgment was void because Rojas did "not send notice reasonably calculated to properly inform [Appellants] of the need to appear or appoint counsel." As discussed above, we normally review a court's denial of a rule 60(b) motion for an abuse of discretion. "But the district court has no discretion with respect to a void judgment because the determination that a judgment is void implicates the court's jurisdiction." *Migliore v. Livingston Fin., LLC*, 2015 UT 9, ¶ 25, 347 P.3d 394. Thus, "the propriety of the jurisdictional determination, and hence the decision not to vacate, becomes a question of law upon which we do not defer to the district court." *Department of Social Services v. Vijil*, 784 P.2d 1130, 1132 (Utah 1989).

ANALYSIS

¶13 To obtain relief under rule 60(b) of the Utah Rules of Civil Procedure, a party must show that "(1) the motion is timely; (2) there is a basis for granting relief under one of the subsections of 60(b); and (3) the movant has alleged a meritorious defense." *Menzies v. Galetka*, 2006 UT 81, ¶ 64, 150 P.3d 480. "These considerations should be addressed in a serial manner," and thus "there is no need to consider whether there is a basis for setting aside a default judgment if the motion was not made in a timely manner, and no need to consider whether there is a meritorious defense if there are not grounds for relief." *Id*.

¶14 Further consideration of these three requirements is instructive. First, for a motion to set aside a default judgment to be timely, "it must be filed within a reasonable time," which under subsections (1)–(3) is "not more than 90 days after entry of the judgment." Utah R. Civ. P. 60(c). Second, as relevant to this appeal, under rule 60(b), a "court may relieve a party . . . from a [default] judgment" if the party shows that the judgment was entered due to "mistake . . . or excusable neglect," or if "the judgment is void." *Id.* R. 60(b)(1), (4). Third, "[a] defense is sufficiently meritorious to have a default judgment set aside if it is entitled to be tried." *Erickson v. Schenkers Int'l Forwarders, Inc.*, 882 P.2d 1147, 1149 (Utah 1994). Motions invoking rule 60(b)(4), however, "d[o] not have to assert a separate meritorious defense, even though the assertion of a separate meritorious defense is generally required in a successful 60(b) motion," *In re Estate of Willey*, 2016 UT 53, ¶ 17 n.9, 391 P.3d 171 (quotation simplified), "because the determination that a judgment is void implicates the court's jurisdiction," *Migliore v. Livingston Fin., LLC*, 2015 UT 9, ¶ 25, 347 P.3d 394.

I. Timeliness

¶15 The district court entered default judgment against Appellants on May 8, 2017, and Appellants filed a motion to set aside that judgment on June 15, 2017, well within the 90-day

requirement of rule 60(c). After oral argument on that motion and the court's adverse determination, Appellants filed a motion for rehearing, which was essentially a motion to reconsider, on November 15, 2017. This was well beyond the 90-day limit, and the district court was not required to entertain Appellants' motion for rehearing—both because it was untimely and because "[m]otions to reconsider are not recognized by the Utah Rules of Civil Procedure."[4] *Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 15, 163 P.3d 615. Our Supreme Court has labeled these types of motions "the cheatgrass of the litigation landscape" and has discouraged their use absent an "extraordinary circumstance." *Shipman v. Evans*, 2004 UT 44, ¶ 18 n.5, 100 P.3d 1151, *abrogated on other grounds by Utahns For Better Dental Health-Davis, Inc. v. Davis County Clerk*, 2007 UT 97, 175 P.3d 1036. Thus, "[b]ecause trial courts are under no obligation to consider motions for reconsideration, any decision to address or not to address the merits of such a motion is highly discretionary." *Tschaggeny*, 2007 UT 37, ¶ 15. Therefore, the district court in this case did have the discretion to consider Appellants' motion, *see Mower v. Simpson*, 2017 UT App 23, ¶¶ 43–44, 392 P.3d 861, and Rojas has not suggested otherwise. Accordingly, the motion is properly before us.[5]

---

4. Aside from the fact that Appellants' motion for rehearing/reconsideration was not explicitly allowed by the Utah Rules of Civil Procedure, we note that this motion was more than a request for simple reconsideration. Rather, Appellants raised new grounds in the motion, and as a motion brought under rule 60(b), it was well outside the 90-day time limit. The district court could have summarily rejected it on this basis. But because the parties have not raised the issue here or before the district court, we do not address it further.

5. "It is an unsettled question in Utah" whether Appellants' claim that the judgment should have been set aside under rule 60(b)(4) is "subject to the reasonable time limit imposed by rule

(continued…)

II. Basis for Granting Relief

¶16    Having determined that Appellants' motion may be deemed timely, we next turn to whether they are entitled to relief under rule 60(b). Appellants argue that the default judgment should be set aside either under subsection (b)(1) due to "mistake . . . or excusable neglect" or under subsection (b)(4) because "the judgment is void." We address each argument in turn.

A.    Rule 60(b)(1)

¶17    Rule 60(b)(1) lists "mistake, inadvertence, surprise, or excusable neglect" as grounds for setting aside a judgment. Utah R. Civ. P. 60(b)(1). In this case, Appellants assert that their failure to appear for the pretrial conference was due to either mistake or excusable neglect.

1.    Mistake

¶18    Appellants assert that "[b]ut for mistakes made by their prior counsel and by the District Court, [they] would have received prior notice of, and would have appeared at, the May 8, 2017 Pretrial Conference." A default judgment will typically be set aside if it was a result of a "mistake." Utah R. Civ. P. 60(b)(1). "'Mistake,' as used in rule 60(b)(1), has general application to the activities of counsel and parties" and also includes "minor oversight[s]" made by the district court. *Fisher v. Bybee*, 2004 UT 92, ¶¶ 11–12, 104 P.3d 1198 (quotation simplified). But if a party's unreasonable behavior explains the mistake, the party cannot benefit from this rule and have the judgment set aside.

———————————————

(…continued)
60(c)." *See In re Estate of Willey*, 2016 UT 53, ¶ 16, 391 P.3d 171. The district court, however, found the motions to be timely, and we have no occasion to revisit that issue because neither party has asked us to do so.

*See Mini Spas, Inc. v. Industrial Comm'n*, 733 P.2d 130, 132 (Utah 1987) (per curiam). *See also Rukavina v. Sprague*, 2007 UT App 331, ¶ 3 n.2, 170 P.3d 1138 ("The Utah Supreme Court has interpreted the terms 'mistake' and 'excusable neglect' to require due diligence on the part of the parties and their attorneys.").[6]

¶19    Parties cannot take a passive role in litigation and allow their counsel, the opposing party, or the court to make a mistake and then rely on that mistake as a basis for later setting aside a judgment. It is clear that, from the beginning of this case, Appellants knew—or at the very least should have known—that neither the district court nor Rojas had their correct mailing addresses, because the court had to authorize their being served with the complaint other than by personal service, for lack of a known address. For the next two years, Appellants failed to correct their address information with the court, much less with Rojas. They should have been aware that the court and Rojas did not have a valid mailing address for Montoya and that if Attorney 3 withdrew, which was likely given their track record,

---

6. The parties disagree about the validity of this footnote from *Rukavina*. Appellants argue that the *Rukavina* court erred in making this pronouncement on the strength of *Mini Spas* because *Mini Spas* itself states: "We have heretofore defined 'excusable neglect' as the exercise of 'due diligence' by a reasonably prudent person under similar circumstances." *Mini Spas, Inc. v. Industrial Comm'n*, 733 P.2d 130, 132 (Utah 1987). Appellants contend that "[a] more sensible reading of the *Mini Spas* decision is that the mistake made by the moving party must simply be reasonable under the circumstances." Appellants' "argument on this point presents a distinction without a difference," *see Bodell Constr. Co. v. Robbins*, 2014 UT App 203, ¶ 9, 334 P.3d 1004, because the standard of a person acting reasonably under the circumstances and a person exercising due diligence are the same. A person who is acting reasonably during a court case will invariably be acting with due diligence, and the other way around.

there would be no way for the court or Rojas to contact Montoya, the "lead defendant." On the notices of withdrawal from Attorney 1 and Attorney 2, Appellants' addresses were either omitted or incorrect. By the time they acquired the services of Attorney 3, Appellants categorically knew that the court did not have a correct mailing address for either of them.[7]

¶20   In addition to failing for nearly two years to ensure the court had their correct addresses, Appellants had actual knowledge approximately two weeks before the May 8 pretrial conference that Attorney 3 had withdrawn on March 22 and that he included in his notice of withdrawal an incorrect address for Montoya. Appellants gained this knowledge when Swanson, upon her return from a month-long vacation on April 21, opened her mail and found Attorney 3's withdrawal. She then informed Montoya of this important development in the case, but instead of timely contacting the court to determine what may have happened with their case and updating Montoya's address forthwith, Montoya waited until "mid-May" to hire Attorney 4. Appellants knew that the next step in the case was to prepare for trial and that Rojas could easily be moving forward with the case during the month after Attorney 3 withdrew. But instead of contacting the court, Appellants decided to wait approximately a month after receiving notice of being unrepresented to seek new counsel.

¶21   Any reasonably prudent persons in this position knowing that the case was likely to move forward—in light of the facts that the case had been pending for nearly two years and there had recently been a continued pretrial conference and a failed mediation attempt—and that the court and the opposing party did not have the lead defendant's correct address, would have promptly contacted the court to at least ascertain the status of the case and make sure that they could receive the appropriate

---

7. The first time Swanson's correct address appears in the record is on Attorney 3's notice of withdrawal.

documents at their proper mailing addresses in order to defend themselves. Therefore, Appellants cannot rely on this "mistake" because they failed to take the reasonable and simple action of contacting the court and correcting the lead defendant's address, which would have led them to receive notice of the pretrial conference[8] well in advance of when it was scheduled to take place.[9] *See Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) ("Carelessness by a litigant or his counsel does not afford a basis for relief under Rule 60(b)(1).").

¶22    Appellants' unreasonable behavior is compounded by the fact that they consistently violated rule 76 of the Utah Rules of Civil Procedure. Rule 76 instructs that "[a]n attorney and *unrepresented party* must promptly notify the court in writing of any change in that person's address, e-mail address, phone number or fax number."[10] Utah R. Civ. P. 76 (emphasis added).

---

8. On April 13, 2017, Rojas also mailed notice of the May 8 pretrial conference to Swanson's California address, which would have been delivered on or about the time she returned from her extended vacation on April 21. Unlike its counterpart sent to Montoya, this notice was not returned as undeliverable. Nevertheless, Swanson asserted that she did not receive notice of the scheduled hearing.

9. In Montoya's affidavit supporting Appellants' motion for rehearing, Montoya claimed to have given Attorney 3 his P.O. box number, but he never provides that P.O. box number in the affidavit nor has he directed us to anywhere in the record where he provided a correct P.O. box number to Attorney 3 or to anyone else. Indeed, to this day, Montoya's address on file with the court remains the widow's street address in Beaver, Utah, which Montoya admits will not work as a mailing address for him or anyone else.

10. Appellants attempt to characterize rule 76 as applying only to unrepresented parties who have the "intention of going forward

(continued…)

Appellants knew on or near April 21, approximately two weeks before the May 8 pretrial conference, that (1) they were unrepresented and (2) Montoya's address had been incorrectly conveyed by their attorneys on multiple occasions. When it came to their attention that they were again unrepresented and Montoya's address was still incorrect, Appellants were required to promptly correct Montoya's mailing address with the court because it is a "defendant's responsibility to maintain contact with the court." *See Bodell Constr. Co. v. Robbins*, 2014 UT App 203, ¶ 13, 334 P.3d 1004.

¶23 But instead of promptly notifying the court of Montoya's correct address, Appellants waited approximately another month, until "mid-May," to hire Attorney 4. By waiting nearly a month to seek new counsel after receiving notice that they were again unrepresented and not "promptly notify[ing] the court" of Montoya's correct address in the meantime, as required by rule 76, Appellants assumed the risk of missing critical court documents and having default judgment entered against them. *See Asset Acceptance LLC v. Stocks*, 2016 UT App 84, ¶ 20, 376 P.3d 322 ("[A] mistake cannot be deemed an innocent error . . . where it involves hewing to a course of action in disregard of [clear

---

(…continued)

*pro se*," which clearly is not them in view of the multitude of attorneys they have retained. Appellants are incorrect. The rule refers simply to an "unrepresented party." Utah R. Civ. P. 76. Parties are unrepresented if they do not have an attorney, not only if they are unrepresented *and* intend to keep it that way. *See Arbogast Family Trust v. River Crossings, LLC*, 2010 UT 40, ¶ 16, 238 P.3d 1035 ("When interpreting a rule of civil procedure, we look to the express language of that procedural rule and to the cases interpreting it.") (quotation simplified). Regardless of whether unrepresented parties intend to find an attorney or to proceed alone, they still must ensure that the court has their correct address throughout the litigation.

rules]. Rather, this is a path that no reasonably prudent person would follow in the face of such risk.").

¶24 Even before Attorney 3's withdrawal, Appellants had the responsibility under rule 76, as unrepresented parties, to update their correct mailing address with the court after the withdrawal of Attorney 1 and Attorney 2, which they failed to do. Thus, Appellants were required on at least three occasions to provide the court with a correct mailing address for Montoya, which would have avoided the problem they now face. The moment it came to Appellants' attention that Montoya's address was incorrect, they should have fixed it with the court and alerted Rojas to the correction. This was not a burdensome responsibility, and defendants are not at liberty to play hide-the-ball with their contact information. Appellants cannot gain relief from a judgment based on this "mistake," because it was a direct result of their failure to follow rule 76. Therefore, we cannot say that the district court exceeded its discretion in ruling that the default judgment would stand.[11] *See Arbogast Family Trust v. River Crossings, LLC*, 2008 UT App 277, ¶ 28, 191 P.3d 39

---

11. Appellants also claim that the district court's mistake in emailing the notice of the pretrial conference to Attorney 1, who had withdrawn over a year before, warrants setting aside the judgment. This argument fails because any prejudice that Appellants suffered from the court's oversight was cured by Rojas when he mailed his notice to the last known addresses the court had for Appellants, which for Swanson was a correct address. Furthermore, the court did not have a correct address for Montoya or information on who Appellants' current counsel was. It is not as though the court had the correct contact information for Montoya and Appellants' attorney but negligently overlooked that information and sent the notice to prior counsel. Ultimately, it was not the district court's job to track down Montoya to ensure that he received notice of the pretrial conference. Rather, it was Montoya's responsibility to keep the court apprised of his mailing address.

("We recognize that default judgments are generally disfavored, but in the absence of an abuse of discretion, we will not undertake to substitute our idea of what is proper for that of the trial court.") (quotation simplified), *aff'd*, 2010 UT 40, 238 P.3d 1035.

2.      Excusable Neglect

¶25     Appellants argue that "[a]ny neglect on the[ir] part . . . that contributed to their failure to appear at the May [pretrial conference] was excusable." Parties may be granted relief under rule 60(b)(1) if their behavior leading to a default judgment against them was the result of "excusable neglect." Utah R. Civ. P. 60(b)(1). Excusable neglect requires a showing of "the exercise of 'due diligence' by a reasonably prudent person under similar circumstances." *Mini Spas, Inc. v. Industrial Comm'n*, 733 P.2d 130, 132 (Utah 1987) (per curiam). *See also Bodell Constr. Co. v. Robbins*, 2014 UT App 203, ¶ 10, 334 P.3d 1004 ("In determining whether a party has exercised due diligence sufficient to justify excusing it from the full consequences of its neglect under rule 60(b), the trial court must consider whether the actions of the party seeking relief were sufficiently diligent and responsible, in light of the attendant circumstances.") (quotation simplified).

¶26     As discussed in section II(A)(1) of this opinion, neither Montoya nor Swanson acted with sufficient diligence to require the district court to set aside the default judgment. For two years Appellants knew Montoya's address with the court was incorrect, and they failed to correct it. Parties exercising due diligence under these circumstances would not have forgone giving their correct addresses to the court, thereby running the risk that they would not receive critical documents. This is especially the case where Appellants already had two attorneys withdraw without providing proper mailing addresses for them. Appellants were also on notice of the withdrawal of Attorney 3—approximately two weeks before the May pretrial conference—when it was clear the case was heading for trial, and they failed to promptly contact the court to ascertain the

status of the case and pass along corrected address information. Furthermore, when parties fail to follow the procedural rules of the court, such as maintaining a correct address with the court when they are unrepresented, they are not acting with due diligence. Overall, Appellants' behavior does not demonstrate that they "used due diligence and that [they] w[ere] prevented from appearing by circumstances over which [they] had no control." *See Airkem Intermountain, Inc. v. Parker*, 513 P.2d 429, 431 (Utah 1973) (emphasis omitted). On the contrary, they were fully in control of their own mailing information.

¶27 Additionally, Swanson cannot show diligence by her action in informing Montoya—the defendant supposedly taking the lead in the case—that Attorney 3 had withdrawn because she did not act diligently after so informing Montoya. Appellants claim that when Swanson informed Montoya of Attorney 3's withdrawal, "[t]his was the first that . . . Montoya had heard that their prior counsel had actually withdrawn." At this point, Swanson was clearly put on notice that relying on Montoya to shepherd the case was not reasonable because Montoya was unaware that their counsel had withdrawn a month earlier at a critical time in the course of the litigation. A reasonably prudent person in this situation, knowing that the person she was relying on was not on top of things, would have taken a more active role in the litigation and contacted the court herself.[12]

¶28 Appellants have not demonstrated due diligence on their part that would require the district court to set aside the judgment against them, and thus the court did not exceed its discretion in declining to set the judgment aside for excusable neglect. *See Menzies v. Galetka*, 2006 UT 81, ¶ 54, 150 P.3d 480 ("A

---

12. As previously indicated, Swanson agreed to Montoya being the lead defendant, and she made the decision to be wholly reliant on him to handle the case. Therefore, Swanson's attempt to have judgment against her set aside on the ground of excusable neglect rises and falls with the actions of Montoya.

district court has broad discretion to rule on a motion to set aside a default judgment under rule 60(b) of the Utah Rules of Civil Procedure.").[13]

## B.    Rule 60(b)(4)

¶29    Appellants next argue that the district court erred in not setting aside the default judgment on the ground that it was void due to Rojas "not send[ing] notice reasonably calculated to properly inform [them] of the need to appear or appoint counsel." A party may be granted relief from judgment under rule 60(b)(4) if "the judgment is void." Utah R. Civ. P. 60(b)(4). "A judgment is void only if the court which rendered it lacked jurisdiction of the subject matter or of the parties, or if it acted in

---

13. Insofar as Appellants seek to characterize their neglect as excusable because of the inept actions of their attorneys, the argument is unavailing. *See generally Holyoak v. Morgan*, 2018 UT App 3, ¶ 6, 414 P.3d 930 (per curiam) (holding that failure of defendant's counsel to read the notice of hearing was not sufficient to justify granting relief under rule 60(b)(1)); *Aghdasi v. Saberin*, 2015 UT App 73, ¶ 8, 347 P.3d 427 ("[A]ttorney's misplacing . . . electronic notices did not constitute excusable neglect."); *Yeschick v. Mineta*, 675 F.3d 622, 629–31 (6th Cir. 2012) (holding that an attorney's failure to update his email address and to check the court docket did not constitute excusable neglect); *Lomas & Nettleton Co. v. Wiseley*, 884 F.2d 965, 967 (7th Cir. 1989) ("This court has stated, in upholding a denial of Rule 60(b)(1) relief requested on the basis of an attorney's negligence, that it would be an abuse of discretion to grant Rule 60(b) relief on the basis of a negligent mistake. Neither ignorance nor carelessness on the part of the litigant *or his attorney* provide grounds for relief under Rule 60(b)(1).") (emphasis added) (quotation otherwise simplified). *See also Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) ("Carelessness by a litigant or his counsel does not afford a basis for relief under Rule 60(b)(1).").

a manner inconsistent with due process of law." *Brimhall v. Mecham*, 494 P.2d 525, 526 (Utah 1972). Service "satisfies due process when it is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 53, 299 P.3d 990 (quotation simplified).

¶30 Rule 5 of the Utah Rules of Civil Procedure allows for service of papers, other than summons and complaint, by "mailing it to the person's last known address." Utah R. Civ. P. 5(b)(3)(C). And, under rule 5(b)(4), "[s]ervice by mail . . . is complete upon sending," *id*. R. 5(b)(4), which underscores the importance of all parties ensuring that the court has their current mailing addresses at all times. Rojas sent notice of the pretrial conference and notice to appear or appoint counsel to the last known addresses of both Swanson and Montoya, and "under the Utah Rules of Civil Procedure, this was sufficient notice." *See Davis v. Goldsworthy*, 2008 UT App 145, ¶ 13, 184 P.3d 626. Whether those addresses were incorrect is not part of the analysis. All a party is required to do to effectuate service after the summons and complaint have been properly served is to mail the documents to the last known address of the opposing party. Anything beyond this would "embrace[] a requirement . . . above and beyond compliance with the rule's service requirements . . . [and] would encourage evasion of service." *Id.* ¶ 13 n.5 (quotation simplified). This judgment was not void for lack of due process.

## CONCLUSION

¶31 The district court did not exceed the sound exercise of its discretion in declining to grant Appellants' motion to set aside default judgment because their unreasonable conduct directly resulted in Rojas mailing notices to incorrect addresses. Appellants also fail to demonstrate any due diligence on their part that warrants reversal on the basis of excusable neglect.

Lastly, the court was not required to grant Appellants' motion to set aside the default judgment on the ground that it was void because Rojas mailed notice to Appellants' last known addresses, which is all that due process requires in this context.

¶32    Affirmed.

————————